HOLLIDAY *et al. v.* THE LOWRY BANKING COMPANY, trustee, *et al.*, and *vice versa.*

1. According to *Frost* v. *Allen*, 57 *Ga.* 326, the instrument executed and delivered by the Atlanta Pianoforte Company to the Lowry Banking Company, as trustee, was a mortgage, and not a conveyance of title, and consequently was not void for usury.
2. Upon the pleadings and the verdict rendered, there was no error in decreeing that the debt represented by the bonds and secured by the mortgage should be credited with the value of the stock received by the lender on account of the bonds, or in charging him with the value of the stock at that time and treating it as a payment *pro tanto* of the debt.
November 6, 1893.

Equitable petition.  Before Judge MARSHALL J. CLARKE.  Fulton superior court.  March term, 1893.

A fund produced by sale of the property of the Atlanta Piano Company (formerly the Atlanta Pianoforte Manufacturing Company) was the subject of contest, for priority of payment, between the Lowry Banking Company as trustee, and Mrs. P. E. Holliday, and others. The first question in the case arises upon the ruling of the court that the instrument now to be described was a mortgage and not a deed, and that its lien upon the fund was not destroyed by usury.  The instrument recites that the board of directors of the pianoforte company, a corporation, by virtue of the authority vested in the board by its charter and by-laws, did on April 8, 1889, by resolution duly passed and entered on the minutes, empower the president, W. B. Miles, to procure a loan of $20,000 for the use of the corporation

on such terms as he should deem advisable, securing the same by deed of trust to the entire property and business of the corporation, and that by virtue of the authority so vested in him he negotiated a loan of $20,-000 at eight per cent. interest, evidenced by eighty notes of $250 each, of the date of this instrument, April 15, 1889. Each note is due one year after date and is payable to bearer at the Lowry Banking Company, bears interest at eight per cent. from date until paid, reserving the right to continue this loan at maturity for two years longer and to pay at any time before maturity by giving the holder sixty days notice, and it is one of a series limited to $20,000, and is secured by trust deed. To secure the payment of these notes, the pianoforte company by the instrument in question transfers and conveys to the Lowry Banking Company, and its successors in trust, the property therein described, to have and to hold for the purpose of the trust therein created. The party of the first part warrants the title to the property, and hereby covenants with the trustee to keep taxes paid on the property and to keep the same insured to the amount of $20,000, payable in case of loss to the trustee for the purpose of this trust; and if the pianoforte company should not keep the taxes paid and the insurance, or if it should fail to pay interest on the notes or any of them as they become due, and such default should continue for sixty days, then the trustee is authorized to take immediate control of the property and business, and after giving notice by newspaper advertisement, it may sell the property and business at public outcry on the premises to the highest bidder for cash, and make title to the purchaser. Out of the proceeds of sale the trustee will pay the costs and expenses of executing this trust, and with the balance, after paying taxes, it shall pay the principal debt above mentioned, and accrued interest. If the pianoforte com-

pany shall keep the taxes paid and the property insured and shall pay the principal and interest of the notes as they fall due, then said trust shall cease and determine, and the title hereby conveyed shall revert to it, and this deed shall be void.

Mrs. Holliday and the piano company contended that the trust deed was void for usury. They admitted its execution prior to Mrs. Holliday's mortgage, and alleged the following as facts concerning it: It was made to the trustee to secure a loan of $20,000 from W. B. Miles to the company on April 15, 1889. By agreement of the parties the contract took the shape of bonds of $250 each, secured by the deed of trust, all of which bonds were taken at the time by Miles, and he furnished the company the $20,000. The bonds drew eight per cent. interest per annum, and interest was paid during the years 1889 and 1890, amounting to some $2,400. Miles exacted, as an additional consideration to the eight per cent. interest, the transfer to himself of $50,000 of the capital stock of the company, amounting to one fourth of its business and property. Under stress of circumstances the company agreed to this additional exaction, and issued to Miles $50,000 of its capital stock to be made as part of the contract of loan and agreed thereto at the time of the loan, which was at the time worth in the neighborhood of $10,000, the stock being given August 2, 1889. It was issued to Miles solely in consideration of the money, and the deed was executed to secure the loan of which this usury is a part. Miles after getting possession of the bonds assumed to sell $10,000 to other parties, indorsing the bonds to them, but this was after the loan to himself and after he took the bonds. Upon taking the $50,000 of stock, he agreed that if the stock could be redeemed within one year from its issue by the company and the stockholders paying to him five per cent. of the value of the stock in

the same proportion as the bonds were to be paid off, that is for every bond of $250 paid off the first year, he would transfer back to the company or the stockholders $625 of the stock upon payment of five per cent. of the face value of the stock, to wit the extra amount of $31.25 per bond. In substance this would enable him to realize on each bond in one year twenty and one half per cent., or twelve and one half per cent. above lawful interest. It was his intention to exact more than lawful interest. Wherefore the trust deed is void as a transfer of title or as creating any lien on the property of the company, and the holders of the bonds are not entitled by virtue of the deed to participate in the fund.

In answer to questions submitted by the court the jury found the following verdict: All the promissory notes secured by the conveyance by the pianoforte company to the Lowry Banking Company were taken by W. B. Miles on his own account. Besides legal interest he received on May 25, 1889, from the pianoforte company on account of the notes, $50,000 of the common stock of the company, valued at fifteen cents on the dollar. Forty-two of these notes are owned by seven other individuals named, none of whom received the notes directly from the pianoforte company as evidence of a loan to it, but received them from W. B. Miles by a transfer from him as the owner of them. The verdict further finds (omitting facts not now material) that there is due from the pianoforte company to Mrs. Holliday $13,600 principal, and $4,550 interest, and that the mortgages to her were not made with the intention to delay or defraud creditors. Upon this verdict the court decreed (having held that the instrument made to the Lowry Banking Company as trustee was a mortgage) that the same be foreclosed for $12,500 principal with interest at eight per cent. on $2,000 from March 1, 1890, and on $10,500 from April 15, 1891; that the verdict

be made the judgment and decree of the court; that out of the fund $2,500 be retained until the application of complainant's counsel for fees shall have been passed upon by a jury; that sundry amounts, including costs, receiver's fees, taxes, and an execution held by one Fuller, be next paid; that the bonds held by various individuals other than Miles, and amounting to $10,500 with interest at eight per cent. from April 15, 1891, be next paid; that four of the bonds held by Miles, amounting to $2,000 with interest at eight per cent. from March 1, 1890, be next paid; and that the remainder of the fund be paid to Mrs. P. E. Holliday on the mortgage executed in her favor by the piano company on July 21, 1891, which is hereby foreclosed.

Mrs. Holliday alleges by her exceptions that the court should have ruled that the trust deed to the Lowry Banking Company was void for usury, and that her mortgage was entitled to priority of satisfaction out of the fund over the deed.   The Lowry Banking Company as trustee excepts by cross-bill to so much of the decree as limits the foreclosure of its mortgage to $12,500 principal with interest, as decrees only $2,000 principal with interest to be paid to W. B. Miles, and as decrees any portion of the fund to be paid Mrs. Holliday; and says that the court erred in not foreclosing said instrument for the full amount of principal and interest of the bonds, to wit $20,000 principal with interest on $9,500 from March 1, 1890, and on $10,500 from April 15, 1891, with direction that the same should be paid out of the fund in court before any portion of the fund should be paid to Mrs. Holliday; the specific error being, that there was nothing in the finding of the jury to authorize a decree reducing the principal amount of recovery to less than what is here contended for, nor anything in the verdict which authorized a decree in favor of Mrs. Holliday for any portion of the fund, until the indebtedness secured by the trustee's mortgage was fully paid.

ARNOLD & ARNOLD, for Holliday *et al.*
CANDLER & THOMSON, *contra.*

LUMPKIN, Justice.

1. It often happens that courts are compelled to decide questions concerning which it is impossible to arrive at a perfectly satisfactory conclusion, and this fact occasions reviewing courts, whose judgments are final, much difficulty and embarrassment. The case before us is an instance of this kind. We have devoted to it much thought and deliberation, and have anxiously endeavored to correctly determine the question whether the instrument executed and delivered by the Atlanta Pianoforte Company to the Lowry Banking Company passed to the latter a title to the property therein described. Were this question an open one, its solution would be very difficult indeed; but in our judgment, the principle of the decision made by this court in *Frost* v. *Allen,* 57 *Ga.* 326, constrains us to hold that the paper referred to is, in its legal effect, nothing more than a mortgage, and cannot properly be considered a conveyance of title. The instrument construed in the case cited certainly used terms which would tend more strongly to show an intention to convey title, than any which can be found in that executed by the pianoforte company; and yet, in the above mentioned case, the paper then under review was held to be only a mortgage. It is true that the provision in that paper renouncing and waiving homestead and exemption rights negatives, to some extent, any purpose to convey title, and thus strengthens the decision then made, because a conveyance of title would necessarily defeat the right to a homestead without expressly so stating, and there is no such provision in the instrument now before us. Be this as it may, however, we are still unable to hold that this instrument is a conveyance of title, after the ruling by this court

that the paper given by the Allens to Frost was merely a mortgage. A comparison of the two papers will, we think, justify this conclusion.

In *Cameron* v. *Phillips*, 60 *Ga.* 434, strongly relied upon by counsel for the plaintiffs in error, this court did not hold that the instrument then under consideration passed the title to the property, but simply that it passed " such a title to the possession of the land in the trustee as [would] enable him to recover in ejectment to carry into full effect the purposes of the trust." There was a power of sale in the paper, and in order to execute this power, it was necessary for the trustee to have possession of the property. Being authorized to seize and dispose of the land, he could not effectually execute the powers conferred upon him when the land was adversely occupied by another, and therefore, as against the maker of the instrument, whose possession was wrongful, and who to that extent was a mere wrongdoer, this court decided that the trustee had such title as would enable him to get possession of the property and sell it to the best advantage of all concerned. The case last cited does not, in our judgment, go further than to rule this, and is therefore hardly in point.

In *Brice* v. *Lane*, adm'r, *et al.*, 90 *Ga.* 294, the instrument which this court held was not a mere mortgage, but passed title, contained neither a defeasance clause, nor a covenant to reconvey.

Without further discussing the nature and purpose of the instrument now under consideration, so far as the same could be ascertained from its own terms, we simply rest our ruling in the case at bar upon the decision of this court in *Frost* v. *Allen*, *supra*. If this instrument was only a mortgage, and did not convey title, it was, according to rulings heretofore made by this court, not void for usury. *Hodge* v. *Brown*, 81 *Ga.* 276, and other decisions to the same effect.

682    HOLLIDAY *v*. LOWRY BANKING CO.    [92 Ga.

2. By a cross-bill of exceptions, the Lowry Banking Company, trustee, assigned as erroneous so much of the decree rendered as required the value of five hundred shares of the common stock of the pianoforte company, at the time it was received by Miles, to be credited upon the principal of the bonds secured by the mortgage. There was no error in so decreeing. The trial judge being of the opinion that the paper executed by the pianoforte company was nothing more than a mortgage, and therefore not void for usury, evidently observed less care in submitting to the jury the question of usury than he doubtless otherwise would have done. In view, however, of the pleadings and the verdict rendered, we think it sufficiently clear that the jury found that Miles received, in consideration of the loan of the money, not only interest at eight per cent., but also five hundred shares of the common stock of the company of the face value of $50,000.00, which stock was worth, at the time he received the same, $7,500.00. This undoubtedly made the transaction usurious, and the court was right in treating the stock as a payment *pro tanto* of the debt due by the company to Miles. Consequently there was no error in decreeing, upon the facts found, that the value of the stock at the time Miles received it should be credited upon the amount for which the bonds secured by the mortgage were given. It makes no difference that this stock may afterwards have become worthless. Miles, as against another creditor, was not entitled, by reason of this fact, to return the stock to the company and thus purge the debt of the usury with which it was originally tainted, and claim payment in full. The stock was worth to the company $7,500 at the time it was delivered to Miles. If he did not realize this value, but suffered the stock to become worthless on his hands, it is a matter about which he cannot complain. Certainly good faith requires, under the facts of this

case, that the principal of the debt represented by the bonds should be reduced by the amount this stock was actually worth when he received it.

On the whole, the decree rendered seems precisely in accord with the law and the facts of this case, and no good reason appears for setting it aside. We therefore affirm the judgment on both bills of exceptions.

*Judgment affirmed.*